OPINION
Defendant-appellant Dennis G. Via appeals from his conviction and sentence for Receiving Stolen Property, with a specification that he had previously been convicted of two or more theft offenses. Via contends that there is insufficient evidence to support his conviction, and that his conviction is against the manifest weight of the evidence. From our review of the record, we conclude that there is testimony in the record that, if believed, would persuade the average mind of Via's guilt, beyond reasonable doubt, and that this testimony is not inherently incredible. Accordingly, we find that there is sufficient evidence in the record to support Via's conviction, and that his conviction is not against the manifest weight of the evidence. The judgment of the trial court is Affirmed.
 I
One evening in June, 1996, Rodney Payne left work with Dennis Via. They picked up some beer, and went to Payne's mobile home to drink it. After Via left, Payne went to bed. Upon waking the next morning, Payne discovered that his television, VCR, and their remote controls, were missing. Payne notified the police. About a month later, police received information from Tracy Tomlinson that the property was located in an apartment where Via's son, Michael Via, and Erika MacKenzie lived. The investigating officer, following up on this information, found a television and VCR matching the description, which were subsequently identified by Payne as being his property. The identification tag showing the model number and serial number had been completely removed from the VCR. The identification tag had been torn from the television to the point where the identifying information thereupon was effectively removed.
Via was charged with Receiving Stolen Property, with a specification that he had been convicted of two or more theft offenses. Following a jury trial, he was convicted, and sentenced accordingly. From his conviction and sentence, Via appeals.
 II
Via's First Assignment of Error is as follows:
 APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
As a threshold matter, Via argues that he was prejudiced by prosecutorial misconduct during closing argument. Via contends that the prosecutor improperly referred to evidence of his two prior theft convictions and one prior conviction for Receiving Stolen Property, as evidence of guilt of the offense charged — Receiving Stolen Property — rather than as evidence of the specification — having been convicted of two or more prior theft offenses.
We have reviewed the record, and we find the prosecutor's references to Via's prior theft offenses, in context, to be as follows:
. . . He has got the ex-wife saying, "She came over to my house. He wanted to sell it. I wouldn't buy it because I know he deals in stolen property." We have got a man that is trying to sell this property, and even by his own son's testimony, he held this VCR, which had all the identification things torn off of it. It was a man who was familiar with stolen property. He has got two prior theft convictions of actual theft and one of receiving stolen property. So he is familiar with stolen property.
. . . .
 . . . . So the only real issue, I guess, is how believable is his son. The whole case comes down to how believable is his son.
 And obviously, his son doesn't want to see his father go to jail. Contrary to his statement, I find it hard to believe he didn't know his father had three prior theft convictions. You know, he is willing to take the heat for him, and he is trying to take as much as he can. He is a first-time offender. He knew he was going to get probation, which is what he did. You have got testimony for that. . . .
There was no objection to these references in the State's closing argument, so they would have to rise to the level of plain error to merit reversal.
Evidence of other crimes is not admissible to prove the character of a person in order to show that he acted in conformity therewith. Evid.R. 404(B). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. In our view, the State was not commenting on this evidence in order to show the jury that Via was likely to have committed this theft offense because he had committed previous theft offenses in the past. To the contrary, the first reference had to do with Via's knowledge that the television and VCR constituting the subject of the charge against him were stolen property. Knowledge is one of the enumerated purposes for which evidence of other crimes may be admissible. But the list of "other purposes," for which evidence of other crimes is admissible is illustrative, not exhaustive. The State's second reference to Via's other crimes went to his son's motive to lie, even to the extent of implicating himself, to protect his father. This, also, was not an improper purpose.
Based upon our review of the entire transcript of the State's opening and closing arguments, we conclude that the references therein to Via's prior theft offenses were not made for any improper purpose, and did not constitute prosecutorial misconduct.
In reviewing a claim that a judgment is against the manifest weight of the evidence, a court of appeals has the undoubted power and duty to weigh the evidence. State v. Thompkins (1997),78 Ohio St.3d 380. In doing so, the court of appeals must determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered, but the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v.Martin (1983), 20 Ohio App.3d 172, 175; cited approvingly in Statev. Thompkins, supra, at 387.
Furthermore, "a decision by a fact finder as to which testimony to credit, and to what extent, is a decision that is entitled to greater deference than the decision as to how much logical force to assign an inference suggested by that evidence — in short, how persuasive it is." State v. Lawson (August 22, 1997), Montgomery App. No. 16288, unreported; see, also, State v.Harris (October 10, 1997), Clark App. No. 3036, unreported.
In the case before us, Erika MacKenzie testified as follows:
 Q. How is it you happened to see him [Dennis Via] on that day? Did he come to your house or —
A Yeah.
Q. Who was with him?
A. Himself.
Q. Did he have anything with him?
A. A television and a VCR.
 Q. And would you recognize that television and VCR if you saw it again?
A. (Nods head up and down).
Q. Are they immediately to your right?
A. Yeah.
 Q. Take a good look at these items if you would. You can get up.
 A. I know what it looks like because I have got a television just like it that I bought.
 Q. And what time of day was it when he came to your house?
 A. Like late, late night. I was like in between sleeping and, you know, awake. I was laying in my bed, though.
Q. Are we talking after eleven at night?
A. No, later.
Q. One, two in the morning?
A. (Nods head up and down.)
Q. Something like that?
A. Yeah.
Q. And who was all in your house right at that time?
 A. It was just me, Tracy and Mike. Cicely was at her mom's house.
Q. And someone awoke you I assume; is that correct?
 A. Yeah. I have a small apartment. If you have seen my apartment, it is not hard to be woke up.
 Q. So were you awakened by the knock on the door or what?
A. Just talking and chat, you know.
Q. Who was talking that woke you up then?
A. Mike and his dad.
 Q. Okay. And you got out of your bed then and went to the living room or whenever [sic] they were?
 A. No, because I could see them from where my bed was. I didn't have to really get up.
 Q. And did you hear the defendant discussing any matters in regards to this T.V. and VCR he had with Mike?
A. Yeah.
Q. What was he saying?
A. He stole it.
* * *
 Q. As best as you can recall his specific words. Obviously, I don't expect you to remember exact words. But as best as you can recall, what did he tell his son?
A. That he took it.
Q. And Mike is his son, correct?
A. Yeah.
 Q. So you have known him for a number of months before that date, Dennis?
A. Uh-huh.
 Q. And why did — did he tell Mike why he brought it to his apartment, to his house?
A. Because he was giving it to us.
Q. What for? For any particular reason?
 A. My birthday I guess. It was my birthday, you know, that week.
 Q. And how long did the defendant stay at your house at that time?
A. Maybe about an hour at the most I think.
 Q. Did he leave the items at your house when he left then?
A. Yeah.
Q. And what did you or Mike do with it after that?
A. Hooked it up and watched it.
Q. You used it?
A. Yeah.
 Q. You hooked it up right in the open in your living room?
A. Yeah.
 Q. You didn't report that to the police though right away; is that correct?
A. (Shakes head from side to side.)
Q. Why not?
A. Just didn't do it.
Q. You knew it was stolen; is that correct?
A. (Nods head up and down).
Thus, MacKenzie unequivocally testified that the defendant brought the television and VCR, which she identified as the stolen property, to the apartment where she was living, acknowledged that he had stolen it, and left it there, ostensibly as a birthday present for her.
In cross-examining MacKenzie, the defense attempted to show that she would have been too sleepy to have had a clear understanding of what was going on, and also that she had a strong antipathy toward Michael Via, from whom she had separated at the time of the trial. However, MacKenzie testified that she was wide awake when she observed and heard the events concerning which she testified, and she also testified that she had no antipathy for the defendant, Dennis Via.
We were not there when MacKenzie testified, both upon direct and upon cross-examination. The jury, which saw and heard her testimony, apparently found her to be a credible witness. We have found nothing in the record that would make her testimony inherently incredible. If the jury believed her testimony, then it would necessarily believe that the defendant, Dennis Via, exercised dominion and control over the television and VCR, giving them to MacKenzie as a birthday present, while knowing that they were stolen, having, in fact, stolen them himself. Therefore, we conclude that his conviction is not against the manifest weight of the evidence.
Via's First Assignment of Error is overruled.
 III
Via's Second Assignment of Error is as follows:
 APPELLANT'S CONVICTION IS SUPPORTED BY INSUFFICIENT EVIDENCE.
As set forth in Part II above, the testimony of Erika MacKenzie, if believed, would persuade the average mind, beyond reasonable doubt, that Via had, and exercised, possession of the television and VCR, knowing them both to be stolen property. Accordingly, we conclude that the evidence in this record is sufficient to support the conviction, and Via's Second Assignment of Error is overruled.
 IV
Both of Via's assignments of error having been overruled, the judgment of the trial court is Affirmed.
YOUNG, P.J., and WOLFF, J., concur.
Copies mailed to:
Jonathan P. Hein
Richard M. Howell
Paul E. Wagner
Hon. Lee Bixler